**Bernard TOBER et al., Plaintiffs,**
**v.**
**CHARNITA, INC. et al., Defendants.**
**Civ. No. 71–77.**

United States District Court,
M. D. Pennsylvania.
Jan. 16, 1973.

John H. Lewis, Jr., Philadelphia, Pa., Anthony Z. Roisman, Washington, D. C., Miles Gibbons, Jr., Harrisburg, Pa., for plaintiffs.

Leroy W. Preston, John J. O'Connor, Jr., Baltimore, Md., H. Thomas Pyle, Gettysburg, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

HERMAN, District Judge.

Before the court is plaintiffs' motion seeking certification of the above action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Opposing plaintiffs' motion, defendants have filed a motion for certification of a non-class action, or to show substantial merit. The defendant, Charnita, Inc., is a real estate development corporation engaged in the sale of land in a subdivision located in Adams County, Pennsylvania. The individual defendants were at the times alleged in the complaint, officers or directors of Charnita, Inc.

The named plaintiffs seek to represent all purchasers of land from Charnita who purchased before July 1, 1969,[1] and who have retained ownership thereof at the time of suit.

The plaintiffs have filed a three-count complaint based upon alleged violations of the Federal Securities acts and common law fraud.

Count I alleges that each sale of land to members of the prospective class constituted a sale of a "security" as that term is defined by § 2(1) of the Securities Act of 1933 (15 U.S.C. § 77b(1)),[2] in that each transaction consisted of the sale of land plus membership interests in a golf club and swimming club sold as a single indivisible unit allegedly for investment purposes. The plaintiffs contend that these sales were consummated without a registration statement having been approved by the S.E.C. as they allege was required by § 5 of the Securities Act of 1933 (15 U.S.C. § 77e)). It is further alleged that the defendants solicited sales and sold lots by means of the mails and instrumentalities of interstate commerce and thereby defrauded plaintiffs through the utilization of the following misrepresentations and omissions of material facts necessary to make the statements made, in the light of the circumstances in which they were made, not misleading: (1) failing to disclose that the success of the venture depended upon the ability to build homes on all or most of the land sold but (as known by defendants) because of the lack of a central sewer system and the unsuitability of most of the land for on-lot sewage disposal homes could not be built on most of the property; (2) leading plaintiffs to believe that this investment would appreciate greatly when others bought land and built homes thereon, when in fact defendants knew or should have known that most purchasers intended to leave their land vacant. Plaintiffs charge that this conduct constitutes violations of Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a)) [3]; Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) [4] and Securities and Exchange

1. It is unclear as to why the plaintiffs have chosen July 1, 1969 as the cutoff date for determination of membership in the prospective class. This date is subsequent to the effective date of the Interstate Land Sales Full Disclosure Act upon which a companion class suit, Hoffman et al. v. Charnita et al., 58 F.R.D. 86, has been based. If the prospective class in the instant case was intended to include those individuals who purchased before the effective date of the Interstate Land Sales Act, the prospective class will have to be redefined to accurately reflect that intention.

2. 15 U.S.C. § 77b(1) provides: "The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, pre-organization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'se-curity', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

3. 15 U.S.C. § 77q(a) provides: "It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—(1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

4. 15 U.S.C. § 78j(b) provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce

Commission Rule 10b–5 (17 C.F.R. § 240.10b–5) [5].

Count II alleges that in May of 1969 plaintiffs were advised that they could in the near future exchange their interest in the golf club and swimming club for common stock of the newly incorporated Charnita, Inc. On or about March 1, 1970 plaintiffs exchanged their ownership interests in the golf club and swimming club for voting common stock of Charnita, Inc. It is alleged that this exchange constituted a "sale" of securities, as defined by § 2(3) of the Securities Act of 1933 (15 U.S.C. § 77b(3)).[6] The registration statement (filed by Charnita, Inc. and approved by the S.E.C. in November of 1969) in effect with respect to the shares of Charnita, Inc. transferred, is alleged to have contained the assertion that lot owners will construct a well and septic tank on their lots at a total cost of approximately $1,450 but omitted the material fact that the success of the venture depended upon the ability to build homes on most of the land sold and that because of the lack of a central sewer system and the unsuitability of most of the land for on-site sewage disposal systems, homes could not be built on most of the land in the subdivision. By selling the common stock of Charnita, Inc. by means of a registration statement allegedly containing material misrepresentations and omitting material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading, defendants are charged with violating § 17(a) of the Securities Act of 1933, *supra,* § 10 of the Securities Exchange Act of 1934, *supra,* and Rule 10b–5, *supra.*

Count III is a pendent claim based upon common law fraud alleging that the materials distributed by defendants in promoting the sale of the land and stock in question and certain oral statements made by defendants in conjunction therewith and upon which defendants intended that plaintiffs rely, were false and either known by defendants to be false or made with a reckless disregard for their truth or falsity. By virtue of the above, plaintiffs allege that their land has declined in value; that they have sustained inconvenience and loss of the use of the land; and that their land is becoming contaminated by pollution from adjacent properties.

Plaintiffs seek alternative relief in the form of recision or damages. Additionally, punitive damages plus the costs of litigation, including attorneys' fees, are sought.

## DISCUSSION

Our decision as to whether this cause of action or any part of it will be allowed to proceed as a class action is gov-

---

or of the mails, or of any facility of any national securities exchange— * * * (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

5. 17 C.F.R. § 240.10b–5 provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a)

To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

6. § 77b(3) provides, in pertinent part: "The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value . . . . ."

erned by Rule 23 of the Federal Rules of Civil Procedure.

Rule 23(a) provides that the following prerequisites must be met before one or more persons may sue or be sued as representatives of a class: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■ In addition to the four prerequisites of Rule 23(a), at least one of the four situations presented in Rule 23(b) must exist. Plaintiffs contend that certification in the instant case is warranted under either 23(b)(1)(A), or 23(b)(3). Under 23(b)(1)(A) it must affirmatively appear that prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. Alternatively, under the less rigid standard of 23(b)(1)(B)(3) the court must find that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that *a class action is superior* to other available methods for the fair and efficient adjudication of the controversy. If it appears that the action can be certified under both 23(b)(1)(A) and (b)(3), it should be certified pursuant to 23(b)(1)(A) since under that subsection prospective class members may not "opt out" and thereby destroy the totally binding effect of any decision rendered on the entire class.[7]

As discussed below, the court, although not without some degree of difficulty, finds that the requirements of Rule 23(a) have been met in the instant case. The issue, therefore, is whether this action can be certified as a class action pursuant to either Rule 23(b)(1)(A) or 23(b)(3).

> 23(a)(1). *The class is so numerous that joinder of all members is impracticable.*

Plaintiffs seek to represent all purchasers from Charnita who have purchased between the date of Charnita's inception in 1964 and July 1, 1969. It is clear that the number sought to be represented is too large to make joinder practicable, assuming for the moment that each individual member of the alleged class may validly assert a claim against defendants. Plaintiffs are unable to predict the exact number of individual purchasers involved. However, it is reasonable to assume that the class may number 2,000 or more (the total number of lots sold by Charnita since 1964 according to defense counsel numbers over 4,000). The identity and exact size of the class members can be ascertained through Charnita's records without a great deal of difficulty.

> 23(a)(2). *There are questions of law or fact common to the class*

It is clear that there are common questions which will affect every prospective class member. The question here is whether the common questions predominate over questions affecting individual members as required by Rule

---

7. Fed.R.Civ.P. 23(c)(2) provides: "In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

23(b)(3). This aspect will be discussed later.

23(a)(3). *The claims or defenses of the representative parties are typical of the claims or defenses of the class,* and

23(a)(4). *The representative parties will fairly and adequately protect the interests of the class*

There has never been an exact definition of the degree of "typical" required by 23(a)(3). Those courts which have suggested an applicable standard equate the requirement of "typical" with the lack of adversity between the class members which is also a standard used to determine whether the representative plaintiffs will fairly and adequately protect the interests of the class as required by 23(a)(4). *See,* Katz v. Carte Blanche Corp., 52 F.R.D. 510 (W.D.Pa. 1971); Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., 52 F.R.D. 335 (D.Minn.1971); Wright & Miller, Federal Practice and Procedure, Civil § 1764 (1972). The two subsections will, therefore, be considered together.

The claims of all members of the class are based upon the same legal theory. It is alleged that all prospective class members purchased land from Charnita without being told that the land in the subdivision was for the most part unfit for on-lot sewage disposal and that other purchasers intended to keep their lots vacant rather than build homes upon them. These undisclosed facts were allegedly known to the defendants, but unknown to the prospective purchasers.

■■ However, all members of the proposed class do not rely upon the same remedial theory. The named plaintiffs do not seek common relief for the entire class but rather seek alternative relief in the form of an option to either rescind the transaction or retain possession of the land purchased and seek damages. The defendants have suggested the possibility that the interests of those class members who seek recision may become adverse to those who wish to retain possession of their land. It may be contended that wide-scale recision by a number of class members may have an adverse effect upon the value of the lands of those members who wish to retain possession.[8] Moreover, those class members who are seeking recision may be opposed to a monetary settlement which could be in the best interests of those who seek damages. While the court recognizes the potential for a conflict of interest between certain class members, we are not prepared to deny class action status at this time upon the prospect of a conflict which may or may not arise in the future. It may later become apparent that only a small number of the class may successfully seek recision. Recision is not a remedy which is automatically granted but must be sought within a reasonable time after discovery of the grounds upon which the remedy is sought. Johns Hopkins University v. Hutton, 326 F.Supp. 250, 261 (D.Md.1971). And too, any adverse interest may later be avoided by establishing sub-classes rather than by a denial of class action status. Under Rule 23(c) and (d) the court may modify, alter or amend its class action order at any time before a decision on the merits is reached. Included therein is the power to create sub-classes or terminate class action status at such time as it appears that an insolvable conflict of interest has arisen.

■ With the exception of the consideration discussed above there is nothing to indicate that the plaintiffs will not adequately represent the class. The parties' attorneys are experienced and qualified to conduct the litigation and

---

**8.** The court also recognizes the possibility that the maintenance of this suit itself may be adverse to the interests of many landowners who wish to continue to live at Charnita and do not want to see Charnita's financial stability impaired to the degree that the entire real estate development may collapse.

there is no evidence that any class member has indicated a displeasure with the representative parties. *See,* Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y. 1968). Nor can it be said that a small number of claimants cannot adequately represent an entire class. *See,* Korn v. Franchard Corp., 456 F.2d 1206 (2d Cir. 1972); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968); Epstein v. Weiss, 50 F.R.D. 387, 391 (E.D.La. 1970). For purposes of meeting the requirements of this section, there is no need that other class members seek to intervene as representative parties. Korn v. Franchard Corp., *supra,* 456 F.2d at 1211, and Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968). If certain members of the class are not satisfied with the representative parties, they can avoid the binding effect of the decision by "opting out".

### Certification under 23(b)(1)(A)

Rule 23(b)(1)(A) provides, *inter alia:*

"(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class . . . ."

Certification under 23(b)(1) should properly be confined to those causes of action in which there is a total absence of individual issues. Only subdivision 23(b)(3) should be applicable to a cause of action, such as the instant one, involving the aggregation of individual claims arising out of one alleged wrong or common course of conduct. In this type of case there will be individual issues which must be decided. The manageability of the process whereby these individual issues are to be decided should be an important factor to consider in determining whether certification is warranted under Rule 23(b)(3).

If a class action is maintainable in the instant case, it is because it is judicially economic and not because varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern Charnita's conduct. The presence of individual issues would preclude this possibility in the instant case. *See,* Contract Buyers League v. F & F Investment, 48 F.R.D. 7, 14 (N.D.Ill.1969).

### Certification under Rule 23(b)(3)

The court is aware of the reluctance shown by the federal courts to deny class action status under Rule 23(b)(3) in causes of action brought pursuant to the Federal Securities Acts, particularly § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. However, this court has not lost sight of what we believe to be the true purposes of class action certification pursuant to Rule 23(b)(3), as expressed by the Advisory Committee in its Note accompanying amended Rule 23 (39 F.R.D. 69, 102–03 (1966)):

"Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."

It is for the court to determine whether certification under Rule 23(b)(3) in the instant case will achieve these purposes.

Two requirements in addition to those set forth in Rule 23(a) must be met before a class action can be maintained under Rule 23(b)(3): The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and, a class action is superior to other availa-

ble methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action.

### Predominance of Common Issues

In most suits concerning S.E.C. Rule 10b-5 the critical issues of fact are as follows: (1) the falsity of the representations made by the defendants or the existence of facts omitted from the statements made; (2) the defendants' knowledge of the falsity of the statements or knowledge of the facts omitted; (3) the materiality of the misrepresentations or omissions; (4) reliance by the plaintiffs upon defendants' representations; and (5) damages. With the exception of the issue of damages and the possible exception of reliance, these critical issues are common to all members of the class. However, the propriety of a class action when the representations are oral must become immediately suspect. There is no question that a class action is maintainable when the representations are standardized in a single prospectus, registration statement, form letter or financial statement which was received by all class members. Where the representations are standardized there is no critical question as to what representations were made to each member of the class and there is no possibility that different representations were made to different class members.

Count I of the plaintiffs' complaint alleges that the defendants' statements containing misrepresentations and omitting of material facts were conveyed orally and through various writings to perhaps thousands of people throughout a five-year period. Were plaintiffs relying solely upon oral misrepresentations which may have of necessity varied as to each class member and which would have to be individually proven, the court would have to deny class action status. Morris v. Burchard, 51 F.R.D. 530, 534–535 (S.D.N.Y.1971); Moscarelli v. Stamm, 288 F.Supp. 453, 462–463 (E.D. N.Y.1968). Where there have been oral misrepresentations the initial critical inquiry is what oral representations were made to each member of the prospective class. Individual inquiry would, therefore, be necessary. However, the court at this point interprets plaintiffs' claim in Count I as alleging reliance not necessarily upon oral representations, the content of which varied as to each class member, but upon the defendants' failure to disclose material facts concerning the adequacy of the land for on-lot sewage disposal. Proof of this omission alone may be sufficient to establish the defendants' liability. If so, proof of the existence of various and differing affirmative oral misrepresentations made by the defendants to some but not all members of the class would not be necessary. *See,* Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968); Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., 52 F.R.D. 335, 344 (D.Minn.1971). If, on the other hand, pretrial discovery discloses the true nature of the cause of action in Count I as alleging reliance not upon omissions of material fact necessarily common to the class but upon a series of dissimilar oral misrepresentations, proof of which would require individual inquiry, the court will have to discontinue the class action aspect of the suit as to Count I and allow plaintiffs to proceed on that Count solely upon the claims of those now before the court. In the latter event, it is the court's opinion that the economies of time, effort, and expense could not be achieved through the utilization of a class action.

The possible necessity of individual inquiry does not arise in regard to the

allegations contained in Count II in which it is alleged that material facts were omitted from a registration statement in effect with respect to the common stock transferred to the class by the defendants. In Count II the standardized representations create a common basis of liability upon which all class members can rely, without the necessity of individual inquiry as to what representations were made to each class member.

■ The defendants suggest that there are, nevertheless, other individual issues in regard to Counts I and II which predominate over the issues common to the class. First, the defendants contend that each class member must prove that he relied upon the alleged misstatements and omissions of material facts. The weight of this contention has been severely limited by the numerous cases which have practically eliminated the requirement of proving individual reliance in Rule 10b–5 class actions.[9] As the Third Circuit is one of the courts which has established a test to mitigate the problem of proving individual reliance, this court is constrained to apply that test in the instant case. In Kahan v. Rosenstiel, 424 F.2d 161, 173 (3d Cir. 1970), Judge Adams, relying upon the Supreme Court's decision in Mills v. Electric Auto-Lite Co., 396

U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), a case based upon § 14(a) of the Securities Exchange Act of 1934, held that proof of reliance is not an independent element which must be alleged to establish a cause of action under Rule 10b–5. Rather, it is sufficient if the misrepresentation is found to be material because that finding justifies the inference that the misrepresentation was such that it would have been an important consideration to a reasonable man. Through the use of this objective test, the question of reliance becomes an issue common to the class.

Moreover, as previously noted, the plaintiffs' claims in Counts I and II to a great extent are based upon defendants' alleged omission of material facts. Even those earlier cases which held that individual reliance was a prerequisite in Rule 10b–5 actions applied a different test in non-disclosure cases. The test in those cases was whether the plaintiff would have been influenced to act differently than he did act if the defendant had disclosed to him the undisclosed fact. *See,* Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967); List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir. 1965). Although the test is a subjective one the difficulty of proving reliance upon non-disclosures has led to the subsequent conclusion that reliance, if necessary at

9. The Second Circuit Court of Appeals, in Korn v. Franchard Corp., 456 F.2d 1206, 1212–1213 (1972), summarized how the question of reliance has been dealt with in class action cases. One line of authority, if necessary, would hold a separate hearing on the issue of reliance as to each individual class member. *See,* Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968); Epstein v. Weiss, 50 F.R.D. 387, 393–394 (E.D.La.1970). Another infers from the materiality of· the misstatement that a reasonable investor would have relied. Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970), cert. denied sub nom, Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290; Johns Hopkins University v. Hutton, 326 F.Supp. 250 (D.Md. 1971). A third line of authority allows proof of general reliance upon a common course of conduct over a period of time, Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964); Dolgow v. Anderson, 43 F.R.D. 472, 489 (E.D.N.Y.1968). A fourth line of authority provides that in cases of omissions the test is whether the claimant would have been influenced to act differently if the undisclosed facts had been made known. See, List v. Fashion Park, Inc., 340 F.2d 457, 463 (2d Cir. 1965); Myzel v. Fields, 386 F.2d 718, 735 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). A fifth line of authority dispenses with the necessity of proving reliance in non-disclosure cases. Epstein v. Weiss, *supra,* 50 F.R.D. at 393; 3 Loss Securities Regulations § 1766 (1961).

all, is but a formal requirement. Epstein v. Weiss, 50 F.R.D. 387, 393 (E.D. La.1970).

Irrespective of which test is chosen, the result is that the issue of reliance alone will not prevent the certification as a class action. To rule otherwise would preclude the utilization of class actions under Rule 10b–5.

 Secondly, defendants contend that there will be individual questions as to whether each class member has complied with the statute of limitations. Defendants suggest that they should be allowed to question each class member as to when he discovered, or in the exercise of due diligence would have discovered the alleged misrepresentations and/or omissions to ascertain whether the statute of limitations may bar that individual member's claim. Section 10(b) of the Act of 1934 does not contain a limitation period. Therefore, it has been held that the court must look to State law. *See,* Johns Hopkins University v. Hutton, 343 F.Supp. 245, 251 (D.Md.1972); Batchelor v. Legg & Co., 52 F.R.D. 553, 558 (D.Md.1971). Since Pennsylvania has no statutory remedy for the fraudulent sale of stock, presumably the six-year statute of limitations for personal actions in trespass would apply (12 P.S. § 31). In Pennsylvania the statute of limitations is deemed to run from the date of the alleged fraudulent transaction unless the defendant actively conceals the fraud, in which case the statute runs from the time of discovery of the fraud or facts which would lead a reasonable man to discovery of the actual fraud. However, federal courts have applied the policy of the statute of limitations contained in the Securities Act of 1933 (15 U.S.C. § 77m) to Rule 10b–5 actions and have held in all cases the cause of action does not accrue and, therefore, the statute of limitations does not begin to run until the fraud is discovered or upon reasonable inquiry should have been discovered. Batchelor v. Legg & Co., *supra*; Vanderboom v. Sexton, 422 F.2d

1233, 1240 (8th Cir. 1970). This would create an issue of fact as to when each plaintiff discovered or should have discovered the alleged fraud. However, as the complaint in the instant case was filed on February 26, 1971, the running of the six-year statute of limitations could possibly preclude only those who purchased before February 26, 1965. This group of purchasers in all probability will be small enough to allow manageable proceedings on the issue of whether these earlier purchasers knew or should have known of the fraud before February 26, 1965.

There is no statute of limitations problem in Count II. The facts alleged therein occurred in March of 1970. The complaint in the instant case was filed on February 26, 1971, less than one year after the occurrence of the events giving rise to the cause of action.

The plaintiffs have also alleged common law fraud claims which are before the court as a matter of pendent jurisdiction. These fraud claims, contained in Count III of the plaintiffs' complaint, are founded upon the same factual allegations contained in Counts I and II.

 Although it has been held that individual reliance is no longer considered an essential element of a class action brought pursuant to S.E.C. Rule 10b–5 and the Securities Exchange Act of 1934 (*See,* Korn v. Franchard Corp., 456 F.2d 1206 (2d Cir. 1972)), it cannot be seriously contended that proof of individual reliance is no longer a required element of common law fraud and deceit.

Although several courts have mentioned the possibility of holding separate trials on the issue of reliance as to each individual class member (*See,* Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968)), to this court's knowledge no court has attempted to suffer through this process. We firmly believe that the process of individual trials with regard to reliance by perhaps several thousand people is untenable and will result in an unmanageable and unduly time-consum-

ing procedure. Nor are we willing to avoid the problem by removing individual reliance as an essential element of common law fraud. To do so, in our opinion, would not only subvert the substantive principles of law involved, but would merely achieve economies of time at the expense of procedural fairness. This latter result is directly contradictory to the purpose of Rule 23(b)(3) as expressed by its authors.

■■■ The court therefore concludes that Count III of the plaintiffs' complaint shall not be maintained as a class action.

### Superiority of Class Actions

■■■ If the court determines that common issues predominate, it follows, unless further factors set forth in Rule 23(b)(3) indicate otherwise, that the class action is a superior method of litigating these claims. First, there is nothing before the court which would indicate that individual members may have an interest in controlling the prosecution of their rights in separate actions, other than a mere desire to maintain a separate lawsuit. The individuals who desire separate lawsuits may, of course, choose to exclude themselves from the class and freely institute their own action. To the court's knowledge there are no other suits pending before any other court concerning the subject matter of this lawsuit. The defendants suggest that this indicates the possibility that there is no desire on the part of other prospective class members to be a party to legal proceedings. However, it may also be indicative of their reliance on the continued validity and maintenance of this suit as a class action. Under the circumstances, the absence of other suits is of insignificant value in determining whether this suit is to be maintained as a class action.

The court has suggested several difficulties which may arise in the management of this suit as a class action. At this point, however, the court cannot state that these possible difficulties will in fact arise, and if they do arise whether or not they will make the class action unmanageable. However, the court reserves its power to alter or amend any aspect of the certification order or discontinue class action status if later circumstances warrant.

■■■ As an alternative to non-certification, defendants ask the court to require plaintiffs to show that there is a substantial possibility that they will prevail on the merits before we render our decision. This procedure was followed by the Southern District of New York in Dolgow v. Anderson, 43 F.R.D. 472, 501 (1968), and 53 F.R.D. 664 (1971). *See also,* Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253, 271 (S.D.N.Y.1971), and has been suggested as an amendment to Rule 23(b)(3) by the American College of Trial Lawyers. Moreover, the procedure is especially appealing here because there are substantial questions as to whether the interests conveyed as alleged in Count I of the complaint were "securities" within the meaning of the Securities Act and whether the transactions or exchanges alleged in Count II constituted a "sale" of securities as defined by the Act. Unfortunately for the defendants, the Third Circuit has unequivocally held in Kahan v. Rosenstiel, 424 F.2d 161, 169 (1970), cert. denied sub nom, Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 that the determination whether there is a proper class does not depend on the existence of a cause of action. The proper procedure, according to this Circuit is to utilize a motion to dismiss under Rule 12, or a motion for summary judgment under Rule 56. Accord, Miller v. Mackey Intl., Inc., 452 F.2d 424 (5th Cir. 1971); City of Philadelphia v. American Oil Co., 53 F.R.D. 45, 61 (D. N.J.1971).

Being precluded from discussing the merits of plaintiffs' case before certification, several courts have conditionally certified the class but in several cases

have delayed the sending of notice to the class to allow the defendant time to file appropriate motions to attack the legal sufficiency of plaintiffs' cause of action, if doubtful. In re Antibiotic Antitrust Actions, 333 F.Supp. 278 (S.D.N.Y. 1971); Cusick v. N. V. Nederlandsche Combinatie Voor Chem. Ind., 317 F. Supp. 1022 (E.D.Pa.1970); Sol S. Turnoff Drug Dist. Inc. v. N. V. Nederlandsche, etc., 51 F.R.D. 227 (E.D.Pa. 1970); City of Philadelphia v. Emhart Corp., 50 F.R.D. 232 (E.D.Pa.1970). But in the instant case the issues to be decided are factual and would require a great deal of discovery and perhaps an evidentiary hearing before the record would be sufficient to support a finding of fact. The delay in sending out notice to the class would be too great to justify such a procedure. Moreover, there will be no necessity to rely upon a preliminary hearing on the merits to determine which party shall bear the cost of notice. As discussed below, it is the court's decision that the plaintiffs shall bear the cost of notice.

Presumably the class sought to be represented in Count II is identical with that sought to be represented in Count I (i. e., all purchasers of land at Charnita who purchased prior to July 31, 1969). However, the court cannot conclude with certainty from the pleadings that all landowners participated in the alleged exchange of "stock" occurring in March of 1970, or that the common stock of Charnita, Inc., was not sold through the use of the alleged false and misleading registration statement to other individuals in addition to the members of the prospective class defined only to include landowners at Charnita. This class, however, should be identifiable by the defendants through records available to them, including stockholders' lists compiled by defendants. Plaintiffs have not indicated a lack of willingness or ability to bear the financial burden incident to the process of notifying all members of the prospective class. Moreover, the court does not find that the cost of notifying the class by mail will be prohibitively expensive assuming its members can be easily identified by the defendants. The class will be identified by the defendants through the discovery motions which are now before the court.

We hold, therefore, that notice complying with the requirements of Rule 23(c)(2) shall be sent by First Class Mail to all identified class members, and the costs thereof shall be paid by the plaintiffs.

The sending of notice will be delayed at least until the defendants have submitted to the plaintiffs their lists of purchasers, from which the class will be identified. In the interim, plaintiffs' counsel shall prepare a draft notice complying with the requirements of Rule 23(c)(2) for submission to the court and defense counsel. Counsel's attention is directed to the form of the notice proposed by the court in Katz v. Carte Blanche Corp., 53 F.R.D. 539, 547-548 (W.D.Pa.1971).