Steven **R. HOFFMAN, et al., Plaintiffs,**

v.

**CHARNITA, INC., Defendant.**
**Civ. No. 70–322.**

United States District Court,
M. D. Pennsylvania.
Jan. 16, 1973.

John H. Lewis, Jr., Philadelphia, Pa., Anthony Z. Roisman, Washington, D. C., Miles Gibbons, Jr., Harrisburg, Pa., for plaintiffs.

Leroy W. Preston, John J. O'Connor, Jr., Baltimore, Md., H. Thomas Pyle, Gettysburg, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

HERMAN, District Judge.

The above-named plaintiffs have brought a two-count complaint seeking from Charnita, Inc. damages for breach or recision of their contract.

Charnita, Inc. is a Pennsylvania land development corporation engaged in the sale of land in a subdivision in Adams County, Pennsylvania, called "Charnita". Plaintiffs have moved, pursuant to Federal Rule of Civil Procedure 23, for an order certifying this action as maintainable as a class action. Plaintiffs seek to represent all purchasers of land at Charnita who purchased on or after July 1, 1969. Count I of the complaint alleges violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. Count II is a pendent claim based upon common law fraud and alleging the same facts pleaded in Count I.

Also before the court is plaintiffs' motion to amend the complaint to add a third count alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation "Z" (12 C.F.R. § 226) promulgated thereunder. The defendant has filed a motion pursuant to Rule 23(d)(4) for certification of a non-class action, or to show substantial merit.

Count I of plaintiffs' complaint alleges that the property report distributed by the defendants to each land purchaser and incorporated in the statement of record required to be filed with the Department of Housing and Urban Development pursuant to § 1405 of the Interstate Land Sales Full Disclosure Act (15 U.S.C. § 1704), contained material misrepresentations and omissions of material facts concerning the availability of sewage disposal facilities. Specifically, the plaintiffs allege the property report contained the following material misrepresentations:

> "Sewage disposal is by septic tank to be installed by the lot owner at an approximate cost of $750.00. Land in the development is suitable for use of septic tanks, as indicated by percolation tests or soil analysis. . . ."

The defendant, however, omitted to inform prospective purchasers that a second percolation test on the property was required before a building permit would be issued and there were in existence at the time of distribution of the property report, federal, state, county and local engineering reports which revealed that the area was generally not suitable for on-site sewage disposal systems.

Pursuant to the provisions of the Interstate Land Sales Full Disclosure Act, civil liability may be imposed upon a land developer who sells land through the utilization of a property report which contains untrue statements or omissions of material fact.

Section 1709(b) of the Act (15 U.S.C. § 1709(b)) provides, *inter alia:*

> "(b) Any developer or agent, who sells or leases a lot in a subdivision * * * (2) by means of a property report which contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein, may be sued by the purchaser of such lot."

Section 1709 further provides that the purchaser may recover damages representing the difference between the amount paid for the lot plus the reasonable cost of improvements thereto and the value thereof as of the time suit was brought or the price at which the lot was bona fide sold either before or during the pendency of the civil suit.

## Certification of Count I as a Class Action

The court finds that the cause of action alleged in Count I satisfies the prerequisite of subsections (a) and (b)(3) of Federal Rule of Civil Procedure 23.

Initially, the court concludes that the prospective class is too large to make joinder practical. Although the plaintiffs cannot ascertain the exact number of class members at this time, it is estimated that several hundred persons purchased lots from Charnita between July 1, 1969 and the date the complaint in the instant case was filed. The exact number of class members can be ascertained by the plaintiffs through the discovery motions now before the court.

The court also finds that the claims of the representative parties are typical of the class, and that the representative parties will fairly and adequately protect the interest of the class. Much of the court's discussion in its memorandum in Tober et al. v. Charnita, Inc. et al., 58 F.R.D. 74, concerning the requirements of subsections (a)(3) and (a)(4) of Rule 23 substantiates our conclusion in the instant case and we do not feel compelled to repeat those considerations here. In Tober, however, the court was concerned about the possible conflict of

interest which may arise between those class members who are seeking recision and those who seek damages. There is no possible conflict in this regard under the Interstate Land Sales Full Disclosure Act which provides only for a civil suit to recover damages and does not sanction the remedy of recision. Therefore, in Count I all class members will, of necessity, be proceeding under the same theory of relief as well as the same theory of liability.

As to the requirements of Rule 23(b)(3), the court concludes that the issues common to the class predominate over issues affecting individual class members and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The only foreseeable individual issue involved in the trial of the cause of action alleged in Count I is that of calculating the amount of damages to be awarded each class member in the event liability is established. Computing the measure of damages for each class member will consist only of establishing the amount paid for the lot in question plus the cost of improvements if any, and subtracting therefrom the market value at the time of suit. All other issues involved in Count I are common to the class. First, the alleged misrepresentations and omissions were standardized in a written property statement furnished to each prospective purchaser before the contract of sale was executed. The defendant points out that there were many amendments made to the property report originally submitted to the Department of Housing and Urban Development, and as the development expanded new subdivisions were created each requiring a new property report containing the disclosure of facts relating specifically to that particular tract of land. Defendant argues that the representations of fact varied with each property report and cannot be considered in light of the facts peculiar to the subdivision covered

thereby. The plaintiffs, however, contend that the entire development was generally unsuitable for on-site sewage disposal and that each property statement contained the same misrepresentations and omissions concerning the availability of sewerage. Therefore, the fact that there were different property reports will not affect the standardization of the relevant representations. On the other hand, if the defendant is correct, the court may be required to establish subclasses or restrict the class to those who purchased lots while the property report alleged in the plaintiffs' complaint was in effect.

■ Regardless of whether the action proceeds pursuant to § 1709(a) which authorizes suit by those who purchased lots covered by a statement of record containing a material misrepresentation or omission, or pursuant to § 1709(b)(2) which authorizes suit against a developer who has sold lots by means of a property report which contained a material misrepresentation or omission, the class can recover without proving reliance upon the material misrepresentations or omissions. There have been no reported cases involving civil suits for damages brought pursuant to the Interstate Land Sales Full Disclosure Act, however, the remedy provided in § 1709 is analogous to that provided by § 12(2) of the Securities Act of 1933 (15 U.S.C. § 77l). Section 12(2) provides for suit against one who sells securities by means of a prospectus or oral communication, "Which includes an untrue statement of a material fact or omits to state a material fact . . .." Under § 12(2) a buyer need not prove that he relied on the misstatement or omission. *See*, Johns Hopkins University v. Hutton, 422 F.2d 1124 (4th Cir. 1970); Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 768 (D.Col.1964). Likewise, under § 1709(b)(2) a plaintiff-purchaser to recover need only prove the existence of material misrepresentations in the property report through

which the lot was sold, or the omission of material facts therefrom. The proof of these elements will be common to the entire class since the plaintiffs allege that the same misrepresentations and omissions were made as to all class members.

There is no indication that there will be difficulties in the management of Count I as a class action.

It is the court's finding at this time that the proceeding can be adequately and fully litigated without sacrificing procedural fairness to the defendant.

For the reasons stated in TOBER, the court will deny the defendant's motion to require plaintiffs to show substantial merit to their claim. It has been suggested that the only preliminary showing that may be necessary is that the plaintiffs' complaint be "more than frivolous". *See,* Katz v. Carte Blanche Corp., 52 F.R.D. 510, 513 (W.D.Pa. 1971), citing 3B Moore, Federal Practice § 723–45(3). The facts alleged in the plaintiffs' complaint are more than adequate to meet this burden.

### COUNT III (of the amended complaint)

In Tober v. Charnita, this court expressed its views concerning the unsuitability of common law fraud allegations for litigation as class actions. Because of the individual issues involved in regard to reliance, this court held that the common issues did not predominate and therefore the requirements of Rule 23(b)(3) could not be met. In TOBER we also indicated our unwillingness to preside at individual proceedings during which each class member would be required to prove that he relied upon the defendants' misrepresentations and omissions and that such representation was reasonable.

Although individual reliance may have been "written off" as elements required to prove a violation of § 10(b) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b–5 (*See,* Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970)),

this court will not be the first to eliminate reliance as an element of common law fraud.

Plaintiffs cite to the court § 479 of the Restatement of Contracts which they contend eliminates the requirement of proving reliance in the instant case. Section 479 provides:

> "Where fraud or misrepresentation is material with reference to a transaction subsequently entered into by a person deceived thereby, it is assumed in the absence of facts showing the contrary that it was induced by the fraud or misrepresentation."

However, the effect of this presumption serves only to establish a prima facie case without specific proof of reliance.

■ It is then incumbent upon the defendant to show, if possible, from the facts of each individual case that the misrepresentation did not induce the action. Application of § 479 does not eliminate the necessity of proving reliance. It cannot be utilized to establish reliance as to the entire class without examining the facts and circumstances of each individual transaction which may establish that the misrepresentation was not the inducing factor. The defendant should be given the opportunity to examine each purchaser individually as to causation.

■ Because of the problems to be encountered in the management of Count II of the plaintiffs' complaint (Count III of plaintiffs' amended complaint) as a class action, the court holds that individual suits are superior to a class action for the fair and efficient adjudication of this controversy. This is not a situation where the prospective class members have not been injured seriously enough to warrant individual suits. Nor, in our opinion, are most of the individuals involved without sufficient resources to institute suit on their own behalf.

Involved is alleged fraud in the sale of real estate valued at several thousand

dollars as to each class member and whether the relief sought is in the form of recision or damages the possible recovery, including punitive damages if the suit is successful, should provide an adequate inducement for the maintenance of suits by individual purchasers who desire to seek legal redress.

Under the circumstances, the court concludes that less judicial time and energy will be expended and the issues involved in Count II will be adjudicated with greater ease and fairness to the defendants through the utilization of individual suits.

### Plaintiffs' Motion to Amend the Complaint

The named plaintiffs have also filed a motion to amend their complaint to assert a new cause of action seeking damages and recision for alleged violations of the Truth in Lending Act (Title I of the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq.) and Regulation "Z" (12 C.F.R. § 1226) promulgated thereunder by the Board of Governors of the Federal Reserve System. Additionally, plaintiffs have applied to this court for an order allowing them to maintain this new cause of action as a class action.

In support of their motion to amend, plaintiffs cite the initial decision of the Federal Trade Commission's Hearing Examiner in the matter of Charnita, Inc. and Charles Rist, Chairman of the Board, filed May 17, 1971, finding that Charnita, Inc., entered into a number of

credit transactions in which it retained a form of security interest in the real estate sold, but failed in all of these transactions to inquire of the obligor as to whether he intended to use the land purchased as a permanent residence, and, therefore, failed to notify those individuals who qualified of their recision rights as required by § 125 of the Truth in Lending Act (15 U.S.C. § 1635) and § 226.9 of Regulation "Z" (12 C.F.R. § 2269).[1] The Hearing Examiner also found that Charnita failed to make a number of other credit term disclosures required by the Truth in Lending Act and Regulation "Z". This preliminary decision was affirmed by the Federal Trade Commission en banc in an opinion filed June 6, 1972 (after argument on the instant motions in this case). The F.T.C. ordered Charnita to take immediate steps to ascertain from those individuals who purchased lots on credit whether at the time of sale they intended to use the property immediately or in the future as a permanent residence. Those purchasers who answered in the affirmative were to be given notification of their right to rescind (in the form required by § 226.9 of Regulation "Z") within three days after receipt of notice.

A petition for review of the decision of the F.T.C. of June 6, 1972 has been filed by Charnita pursuant to 15 U.S.C. § 45 and is now pending before the Third Circuit Court of Appeals (to No. 72–1702). A decision by the Court of Appeals either affirming or vacating the F.T.C order will dispose of the issue of

---

[1]. 15 U.S.C. § 1635 provides, in pertinent part: "[I]n the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later. . . ."

The language of 12 C.F.R. § 226.9 is substantially similar to that found in the act; however, the regulation limits the application of recision rights to credit transactions in which the creditor retained a security interest in any real property which is to be used as the *principal* residence of the obligor. This modification eliminates the right to rescind in transactions in which the encumbered realty it to be used as a second or "summer" residence.

whether Charnita has violated § 125 of the Truth in Lending Act and § 226.9 of Regulation "Z", and whether the plaintiffs or any members of the class they seek to represent may be afforded the remedy of recision at this time.

■ If the F.T.C. order is affirmed, those members of the plaintiff class who qualify will be granted the recision rights they seek in the instant case. On the other hand, if the F.T.C. order is vacated, the doctrine of *res judicata* will prevent this court from entertaining further proceedings to obtain the same relief. Initially, therefore, the court determines that the plaintiffs shall not be granted leave to amend the complaint to allege violations of § 125 of the Truth in Lending Act, and § 226.9 of Regulation "Z".

The plaintiffs have also alleged a number of other violations of the Truth in Lending Act for which they may bring cause of action for damages pursuant to § 130 of the act.[2] Specifically, plaintiffs' amended complaint alleges that Charnita failed to make the following disclosures:

"(a) failed to use the term 'cash price' to designate the cash price of the property which was the subject of the transaction as required by § 226.8(c)(c) of Regulation Z;

"(b) failed to disclose the amount of down payment in money as the 'cash down payment', using that term, as required by § 226.-8(c)(2) of Regulation Z;

"(c) failed to disclose the difference between the cash price and the cash down payment using the

term 'unpaid balance of cash price' as required by § 226.-8(c)(3);

"(d) failed to disclose the sum of the cash price, all charges other than the cash price which are included in the amount financed but which are not part of the finance charge, and the finance charge, using the term 'deferred payment price', as required by § 226.8(c) of Regulation Z;

"(e) failed to identify defendant Charnita as the creditor as required by § 226.8(a) of Regulation Z;

"(f) failed in connection with offers of a discount for prompt payment to make the separate disclosures as required by § 226.-8(o), as amended, of Regulation Z, on the invoice of other evidence or sale, as required thereby;

"(g) failed in connection with offers of a discount for a prompt payment to exclude from the amount of the cash price the greatest amount of discount for prompt payment of which the customer may avail himself under the terms of the offer as required by § 226.8(c)(1) of Regulation Z; and

"(h) failed in connection with offers of a discount for prompt payment to itemise [sic] the amount of the discount as part of the finance charge, as required by § 226.8(c)(8)(i) and § 226.8(o), as amended, of Regulation Z, and to include that amount in

2. Section 130(a) (15 U.S.C. § 1640(a)) provides: "Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of (1) twice the amount of the fi-

nance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court."

94

the finance charge when disclosing the amount of the finance charge as required by § 226.-8(c)(8)(i) of Regulation Z and when computing the annual percentage rate, as required by § 226.8(b)(2) and § 226.8(o), as amended, of Regulation Z."

■ Our decision with regard to whether the plaintiffs may amend their complaint to plead these new damage claims is governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) provides that after a responsive pleading has been served "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Unless it is shown that the amendment is sought in bad faith for the purposes of delay, or the opposing party will be unduly prejudiced, the amendment should be allowed. 3 Moore, Federal Practice § 15.08 [2], p. 875; Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Chamberlin v. United Engineers and Constructors, Inc., 194 F. Supp. 647 (E.D.Pa.1961).

■ Plaintiffs' motion to amend was filed on September 28, 1971, approximately 15 months subsequent to the filing date of the original complaint and 12 months subsequent to plaintiffs' first amended complaint. The plaintiffs only explanation as to the delay is that the Federal Trade Commission Hearing Examiner's decision finding violations of the disclosure requirements of the Truth in Lending Act was not filed until May 17, 1971. However, the alleged violations occurred and the cause of action arose when the plaintiffs entered into the credit transactions upon which the action is based. The Truth in Lending Act has been in effect since July 1, 1969 and the claims now sought to be asserted could have been pleaded in the original complaint, filed on July 1, 1970. It has been held, however, that long delay alone is not an adequate reason to deny

amendment. It is only if the delay indicates the presence of bad faith or substantially prejudices the opposing party that leave to amend should be denied. *See,* Farkas v. Texas Instruments, 429 F.2d 849 (1st Cir. 1970); Green v. Wolf Corp., 50 F.R.D. 220 (S.D.N.Y.1970). There is no evidence before the court suggesting bad faith, and as discussed below the court does not find that the defense will be prejudiced by the delay.

■ The defendant will not be forced to prepare defenses to a cause of action heretofore unfamiliar to it. The defendant was informed by the Federal Trade Commission of possible violations of the credit disclosure requirements of the Truth in Lending Act early in 1970. A complaint was filed by the F.T.C. on January 11, 1971 alleging the same violations set forth in plaintiffs' amended complaint. The Hearing Examiner's initial findings were filed on May 17, 1971. There has been a substantial history of litigation in regard to these Truth in Lending violations and the defendant should be adequately prepared to defend these claims at the present time.

For the foregoing reasons the court will allow plaintiffs to amend their complaint to set forth a cause of action for damages pursuant to § 130 of the Truth in Lending Act.

## CLASS ACTION

The plaintiffs seek the right to maintain their cause of action brought under the Truth in Lending Act as a class action on behalf of all those who purchased lots from Charnita on credit, on or subsequent to July 1, 1969.

Assuming for purposes of this discussion that the requirements of Federal Rule of Civil Procedure 23(a) have been met, we turn to the difficult issues of whether the questions of law and fact common to all members of the class predominate over any questions affecting only individual members, and whether a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.

As of this date there have been eight reported cases which discuss the issue of whether a class action is superior to other available methods for the fair and efficient adjudication of damage claims arising under § 130 of the Truth in Lending Act. Gerlach v. Allstate Ins. Co., 338 F.Supp. 642 (S.D.Fla.1972); Buford v. American Finance Co., 333 F. Supp. 1243 (N.D.Ga.1971); Ratner v. Chemical Bank New York Trust Co., 329 F.Supp. 270 (S.D.N.Y.1971), 54 F.R.D. 412 (S.D.N.Y.1972); Shields v. Valley Nat'l Bank of Arizona, 56 F.R.D. 448 (D.Ariz.1971); Shields v. First Nat'l Bank of Arizona, 56 F.R.D. 442 (D. Ariz.1972); Wilcox v. Commerce Bank, 55 F.R.D. 134 (D.Kan.1972); Rogers v. Coburn Finance Corp. of DeKalb, 53 F. R.D. 182 (N.D.Ga.1971); 54 F.R.D. 417 (N.D.Ga.1972); Katz v. Carte Blanche Corp., 52 F.R.D. 510, W.D.Pa.; 53 F.R. D. 539 (W.D.Pa.1971). Seven of these cases have refused to certify the class action, holding that because of the particular nature of the remedy granted by § 130 of the Truth in Lending Act, it was unnecessary and unjust to permit the suit to be litigated as a class action. Only Katz v. Carte Blanche Corp. has certified the class action under Rule 23.

The authorization of civil suits for damages found in § 130 of the act has been characterized as aid in enforcement by individuals acting in the capacity of private attorneys general. *See,* Ratner v. Chemical Bank New York Trust Co., 329 F.Supp., at 280. Liability under § 130 is founded solely upon the creditors' failure to disclose any credit information required to be disclosed by the act.

The amount of recovery is computed by doubling the finance charge incurred by the plaintiff in the credit transaction. However, § 130 provides that the creditor may sue for a minimum recovery of $100 if no financial charge was imposed. In any event the recovery may not exceed $1,000. There is no requirement that the plaintiff prove that he was deceived by the failure to disclose and thereby induced to pay the "finance charge in connection with the transaction." Moreover, damages may be recovered even if the credit extended by the defendant was under the best possible terms. As an additional inducement § 130 provides that in the case of a successful action, costs and reasonable attorney's fees may be recovered.

In the cases in which class action status had been denied, the members of the proposed class had not incurred a finance charge in connection with any credit transactions and the named plaintiffs were suing to recover the $100 minimum recovery for each member of the class. For example, in Ratner the proposed class of Master Charge credit card holders was comprised of over 130,000 members. The court there held that allowing a class action recovery of $100 for each credit card holder "would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to the defendant, for what is at most a technical and debatable violation of the Truth in Lending Act." 54 F.R.D., at 416. The allowance of a class action to recover the $100 penalty was held to be essentially inconsistent with the legislative policy behind the remedy provided by § 130.[3] *Accord,* Wilcox v. Commerce

3. The liability of the defendant if a class action would have been imposed in Ratner would have been $13,000,000. In Rogers v. Coburn Finance Corp. of DeKalb, *supra,* the proposed class consisted of 300 borrowers and the total liability would have been $30,000, according to the court payment of this sum would have put the defendant out of business. In

Buford v. American Finance Co., *supra,* the class numbered 30,000 and liability would have been $13,000,000. In Gerlach v. Allstate Ins. Co., *supra,* the class was 50,000 strong and the minimum liability would have been $5,000,000. *But see,* Katz v. Carte Blanche Corp., 53 F.R. D. 539 (W.D.Pa.1971), wherein the court certified a class action in which 600,000

Bank, *supra*; Rogers v. Coburn Finance Corp. of DeKalb, *supra*.

The nature of the credit transactions involved in the instant case indicates the probability that the finance charges involved may well be in excess of $100. Judge Frankel, in Ratner, 54 F.R.D., at 416 (n. 7), indicated that cases wherein the named plaintiffs represent a class of individuals who have suffered actual damages exceeding the $100 minimum may present a stronger appeal for class action litigation. However, the plaintiffs' amended complaint does not allege that actual damages were incurred. It does not allege that the plaintiffs were induced by the failure to disclose credit terms to enter into an unfavorable credit transaction, or were otherwise injured in any way by the disclosure violations. The recovery therefore, whether it be $100 or in excess thereof, is strictly punitive and cannot be considered actual damages. The class of plaintiffs sought to be represented in this case may consist of approximately 600 persons who purchased land on credit from Charnita between July 1, 1969 and July 1, 1970.[4] The minimum collective liability if only the $100 penalty were recovered, would be approximately $60,000. If this recovery is exorbitant in light of the actual damage suffered by the plaintiffs and the benefit derived by the defendant, the adverse effect is much greater where, as here, the plaintiff class sues to recover sums in excess of $100 without proof of actual damages.

■ There is no doubt that a liability of $60,000 or more would have a strong deterrent effect upon the defendant and other creditors. However, the Federal Trade Commission has brought administrative proceedings against the defendant and has issued a cease and desist order which should protect against future violations. The F.T.C. proceeding and the authorization of suit by individual credit purchasers who may recover costs and attorneys' fees will be a sufficient deterrent to the defendant. It is clear that a class action is unsuited and unnecessary, both as a means of enforcing the policy of the Truth in Lending Act and as an incentive to litigate claims which are too small to warrant individual suits by claimants who could not absorb the cost of suit. Each individual class member has been provided with an adequate remedy by means other than a class action. Shields v. First Nat'l Bank of Arizona, *supra*, 56 F.R.D. at 446.

For the reasons expressed above, the court finds plaintiffs have not met their burden of establishing that the class action is superior to other available remedies, and the plaintiffs' motion to certify Count II of the amended complaint as a class action is denied.

An appropriate order will be entered.

---

credit card holders were represented (although a certain percentage used their cards strictly for business purposes and were therefore exempt from the act's protection which extends only to consumer credit) thereby subjecting the defendant to a liability which may well exceed $40,000,000.

4. The Federal Trade Commission, in its decision of June 6, 1972, found that approximately 470 persons purchased lots from Charnita on credit between July 1, 1969 and March 20, 1970.