### In re C.B.G. LIMITED, Debtor-in-Possession.

### Bankruptcy No. 5–92–00525.

United States Bankruptcy Court, M.D. Pennsylvania.

July 7, 1992.

**571**

Peter J. Hoegen, Jr., Wilkes–Barre, PA, for debtor/plaintiff.

Myles Wren, Scranton, PA, for defendant First Eastern Bank.

Robert N. Opel, II, Kingston, PA, for defendant RCP.

Michael Cordone, Wilkes–Barre, PA, for defendant J.L. Wolgin.

## MEMORANDUM AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

C.B.G. Limited, the Debtor-in-Possession, is a developer of a residential land development, known as Valley of the Lakes, in Northeastern Pennsylvania. The property includes approximately three thousand eight hundred ninety-one (3,891) acres. The overall development plan assumes the construction of four (4) man-made lakes, residential units including single-family, detached residences and townhouses, golf courses, ski lodge/motel, and a commercial/office shopping strip. About eight hundred (800) acres of subdivided lots have been sold. The current inventory of lots exceeds five thousand (5,000) units.

■ The Debtor-in-Possession has presented a request for approval of emergency funding under 11 U.S.C. § 364(d)(1) in the amount of Six Hundred Thousand Dollars ($600,000.00) proposed to be secured by a senior lien on property of the estate, now subject to a first mortgage of J.L. Wolgin (hereinafter "Wolgin") and subsequent mortgages to First Eastern Bank, N.A. (hereinafter "Bank"). By Stipulation and for purposes of this hearing only, the Wolgin balance is deemed to approximate One Million Seven Hundred Fifty–Three Thousand Three Hundred Ninety–One Dollars ($1,753,391.00) and the Bank balance has been set at Twenty–Two Million Four Hundred Twelve Thousand Three Hundred Ninety–Three Dollars ($22,412,393.00). These amounts do not include costs or legal fees.

11 U.S.C. § 364(d)(1) reads as follows:

The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

■ As set forth in 11 U.S.C. § 364(d)(2), the burden of proof on the issue of adequate protection is with the Trustee or Debtor-in-Possession.

Federal Rule of Bankruptcy Procedure 4001(c) permits this Court to authorize emergency financing but "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing".

Additionally, the parties have agreed that the valuations used by the Court shall be applied to not only this outstanding motion but also to the Bank's Motion to Lift the Automatic Stay. *Record Vol. I at p. 16.*

To summarize the Debtor's burden, the following must be established: (1) inability to obtain credit "otherwise"; (2) adequate protection of the liens to be subordinated to the financing; and (3) immediate and irrep-

arable harm to the estate if the emergency loan is not authorized.

This Court is satisfied by the testimony of Debtor's principal, Frank Cedrone, that other financing sources have been exhausted, thus meeting the initial requirement.

■ The Debtor's only offer of "adequate protection" during the course of the two (2) day hearing on this issue was limited to the alleged "equity cushion" that existed in its real property by reason of its current market value and financing agreements that apparently are payable to the Debtor-in-Possession and which have been assigned to the Bank in the amount of Five Million Three Hundred Twenty–Two Thousand One Hundred Sixty–Six Dollars ($5,322,166.00).

The Debtor offered no specific explanation as to how the $5.3 million dollar receivable was valued. On cross examination, it was learned that approximately Three Million Dollars ($3,000,000.00) of these financing agreements were paying when due. It was also established that defaults in payments on these agreements would likely increase if lot purchasers lose confidence in the prospects of a successful Chapter Eleven.

Although it is with great difficulty that the Court sets a present dollar value on this receivable based on the sketchy testimony offered, the Court will find that the present value of the receivable is Three Million Dollars ($3,000,000.00).

The larger part of the hearing involved the proverbial "battle of the appraisers". Debtor's expert concluded that the real estate was worth Thirty–Seven Million Six Hundred Sixty Thousand Dollars ($37,660,-000.00) and the Bank's expert indicated a value of Twenty–Four Million One Hundred Fifty Thousand Dollars ($24,150,-000.00). Although both experts presented solid credentials, Debtor's expert was not a licensed appraiser in Pennsylvania and appeared not to have analyzed his comparables quite as thoroughly as the Bank's expert. Nevertheless, the Bank's expert omitted from his analysis, without reasonable explanation, a fifty-five (55) acre commercial parcel. Accordingly, the Court finds the value of the parcel as Twenty–Four Million One Hundred Fifty Thousand Dollars ($24,150,000.00) together with Debtor's valuation of the fifty-five (55) acre parcel of One Million Six Hundred Twenty Thousand Dollars ($1,620,000.00) or a total of Twenty–Five Million Seven Hundred Seventy Thousand Dollars ($25,770,000.00).

When the value of real estate and the receivables are totaled, the Court finds a total collateral value of Twenty–Eight Million Seven Hundred Seventy Thousand Dollars ($28,770,000.00).

With the collateral valued at Twenty–Eight Million Seven Hundred Seventy Thousand Dollars ($28,770,000.00) and the existing secured debt at Twenty–Four Million One Hundred Sixty–Five Thousand Seven Hundred Eighty–Four Dollars ($24,-165,784.00), there remains equity of Four Million Six Hundred Four Thousand Two Hundred Sixteen Dollars ($4,604,216.00) or sixteen percent (16%) of total value.

The proposed financing of Six Hundred Thousand Dollars ($600,000.00), if approved, will reduce that equity cushion to below fourteen percent (14%).

Equity cushion has been defined as the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property. *In Re Mellor*, 734 F.2d 1396 (9th Cir. 1984), at page 1400.

As was pointed out in the Bank's appraisal, significant changes in interest rates for mortgage money, federal tax laws and general economic conditions nullify the valuation process. *Bank Exhibit 1, p. 4.* The obvious result would be significant changes in the market value of the real estate collateral.

Additionally, interest is accruing and real estate taxes, currently at One Hundred Twenty–Five Thousand Dollars ($125,-000.00), are not being paid, thus contributing to a continuing decrease in the equity cushion.

■ For the purposes of this hearing, it is conceded that the existence of an "equity

cushion" alone may constitute adequate protection. Whether an equity cushion does constitute adequate protection is determined on a case by case basis. *In Re McKillips,* 81 B.R. 454 (Bkrtcy.N.D.Ill. 1987) at page 458.

According to the well-researched case of *In Re McKillips, Id.,* case law almost uniformly concludes that: (1) an equity cushion of twenty percent (20%) or more constitutes adequate protection; (2) an equity cushion of less than eleven percent (11%) is insufficient; and (3) a range of twelve percent (12%) to twenty percent (20%) has divided the Courts.

Indeed, adequate protection for partially developed land has been held to require a much greater equity cushion. *In Re Scott,* 5 B.R. 37 (Bkrtcy.M.D.Pa.1980).

█ It is the opinion of this Court that collateral such as partially developed real estate requires that the twenty percent (20%) threshold be crossed in the absence of additional forms of adequate protection. Accordingly, we are constrained to find that the Debtor has failed to meet its burden of demonstrating adequate protection to existing lien creditors.

This being the finding of the Court, it is unnecessary to consider whether the alleged harm occurring to the estate if funds are not obtained, rises to "immediate and irreparable" under Federal Rule of Bankruptcy Procedure 4001(c).

Accordingly, Debtor's Motion for an emergency order to incur secured debt for Six Hundred Thousand Dollars ($600,-000.00) and to grant a super-priority lien to Kennedy Funding, Inc. is hereby DENIED.