Leon R. DONGELEWICZ,
et al., Plaintiffs,

v.

FIRST EASTERN BANK,
et al., Defendants.

No. 3:CV–95–0457.

United States District Court,
M.D. Pennsylvania.

Sept. 30, 1999.

Roger S. Antao, Enna Chuang, Antao & Chuang, Palisades Park, NJ, Enna Chuang, Williamsport, PA, for Plaintiffs.

William A. Slaughter, Walter M. Einhorn, Jr., Thomas B. Roberts, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, Mark Stephen Stewart, Ballard Spahr Andrews & Ingersoll, Camden, NJ, Steven A. Arbittier, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, John Brooks Randle, Law Offices of John Brooks Randle, Clarks Summit, PA, Ronald C. Travis, Rieders, Travis, Mussina, Humphrey & Harris, Williamsport, PA, Gerald E. Hanlon, Morriston, NJ, Valerie G. Zim, Rieders Travis Mussina Humphrey & Harris, Williamsport, PA, Joseph R. Ferrdinand, Mylotte, R. Ferdinand, Mylotte, David & Fitzpatrick, Hazleton, PA, Eric T. Bielawski, Mylotte, David, Fitzpatrick, Voorhees, NJ, for Defendants.

## *MEMORANDUM*

MCCLURE, District Judge.

### *BACKGROUND:*

On June 17, 1994, plaintiffs, lot owners in a recreational housing development called the Valley of Lakes, commenced this action with the filing of a complaint pursuant to: the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (Count I); the Interstate Lands Sales Full Disclosure Act, 15 U.S.C. § 1701 (Count II); 42 U.S.C. § 1983 (Count III); the New Jersey Real Estate Full Disclosure Act, N.J.S.A. § 45:15–16.47 (Count IV); and the common law of New Jersey for fraud and deceit (Count V). The complaint was filed in the United States District Court for the District of New Jersey and was transferred to this court by Order of Court dated March 15, 1995.

Succinctly stated, plaintiffs allege a long history of mismanagement, broken promises, and fraud on the part of persons in ownership and management positions at Valley of Lakes over the years. Plaintiffs have been certified to proceed as a class pursuant to Fed.R.Civ.P. 23. Default has been entered against defendants Frank M. Cedrone, C.B.G., Ltd., Oneida Water Co., and Valley Utilities Co., Inc. The remaining defendants are First Eastern Bank, N.A., First Eastern Corp., MLA Management Associates, Inc., Ralph Conte, and Arlene Rainess Conte.

Before the court are a number of motions by the parties. We note at the outset that, due to the number of motions and the prolixity of the arguments, every argument and issue cannot possibly be addressed without production by the court of a massive memorandum. We therefore will restrict ourselves to the primary arguments raised, summarize as much as possible, and attempt to limit ourselves to the issues the resolution of which govern disposition of the motions.

### *DISCUSSION:*

### *I. PLAINTIFFS' MOTION TO SUPPLEMENT AND AMEND COMPLAINT*

Plaintiffs move to amend Count I of the complaint to add a number of transactions, events, and occurrences which either took place after the filing of the original complaint, or which occurred before the filing

of the original complaint but about which plaintiffs did not learn until discovery. As discussed below, the RICO claims are barred by the statute of limitations, so that amendment would be futile. The motion will be denied.

## II. MOTION FOR EXTENSION OF DEADLINES

Plaintiffs move for an extension of the deadlines for discovery, dispositive motions, and expert witness reports. The motion also seeks an order compelling responses from certain defendants to discovery requests from plaintiffs. The court's computer docketing system shows the motion as still pending, despite its having been addressed in an order dated June 19, 1998 (record document no. 261), and the substance of the motion having been addressed in an order dated January 6, 1999 (record document no. 373). The motion will be denied as moot.

## III. MOTIONS FOR DECERTIFICATION

■ Defendants move for decertification of the classes and sub-classes whose claims are asserted against the relevant moving defendant. Common to these motions is the assertion of a problem with the statute of limitations which renders the case unmanageable as a class action. We agree.

In certifying the class and various sub-classes, we relied in part on *Keystone Insurance Co. v. Houghton*, 863 F.2d 1125 (3d Cir.1988), in which the Third Circuit held that a cause of action under RICO accrues for purposes of the statute of limitations when the plaintiff knew or should have known that the elements of a cause of action existed. However, if further predicate acts which are part of the pattern of racketeering activity occur, the statute began to run from the date the plaintiff knew or should have known of the last such act.

In *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997), the Supreme Court held that the "last predicate act" method of accrual under RICO was not a proper interpretation of the statute. The Court declined, however, to establish a particular method of accrual as being appropriate. *See generally Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 655–656 (3d Cir.1998).

■ Since *Klehr* and *Rolo*, several courts in the Third Circuit have concluded that, while the "last predicate act" rule no longer applies, it continues to be the law of this circuit that the limitations period for a RICO claim begins to run when the plaintiff was aware of the elements of the RICO claim. That is, the period begins when the plaintiff knew or should have known that the defendant engaged in a pattern of racketeering activity and that the plaintiff was injured by the pattern of racketeering activity (the "injury plus pattern" rule). *See, e.g., Perlberger v. Perlberger*, 1999 WL 79503, at *3 (E.D.Pa. Feb. 12, 1999) (Padova, J.); *Forbes v. Eagleson*, 19 F.Supp.2d 352, 357–358 (E.D.Pa.1998) (O'Neill, J.); *Gunter v. Ridgewood Energy Corp.*, 32 F.Supp.2d 166, 173 (D.N.J.1998) (Walls, J.).

The named plaintiffs in this case allege predicate acts which began in the 1970's and purportedly continue today. The times at which members of the class and sub-classes bought plots in the Valley of Lakes differ widely and the purchases were made with widely varying degrees of knowledge and sophistication.

For example, Leon and Margaret Dongelowicz purchased their lot in October of 1989, while George and Sharon DePersia bought two lots in 1975 and 1976. Clearly, a different analysis would apply to a person who buys based on a promise of a lake and golf course which do not occur when there is an extra 13–14 years to realize that these amenities have not appeared. Moreover, Francis Burns is a licensed real estate salesman who actually worked for CBG and sold lots in Valley of Lakes. Again, a different analysis would apply, as such a person would be expected to recog-

nize false statements before an unsophisticated buyer.

Since the statute of limitations defense asserted by defendants plainly has merit, and plainly requires consideration of widely differing factual circumstances, we conclude that decertification of the class and sub-classes is warranted.

## IV. FIRST EASTERN'S MOTION FOR SUMMARY JUDGMENT

### A. Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed. R.Civ.P. 56(c) (emphasis added).

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex* at 323, 106 S.Ct. 2548. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson* at 248, 106 S.Ct. 2505. The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Boyle* at 393; *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir.1988).

If the moving party satisfies its burden of establishing a prima facie case for summary judgment, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. *Boyle* at 393 (quoting, *inter alia, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### B. Statement of Facts

Again due to the prolixity of the pleadings and other documents filed in this case, it is impossible to set forth a thorough recitation of the facts without defrosting a large portion of the continent. We therefore will attempt a statement which is more a summary of the facts, emphasizing those which are most pertinent to our disposition of the motion.

The Valley of Lakes real estate development began in the 1970's under the auspices of a company called High Vista, Inc.

High Vista went bankrupt, and CBG[1] eventually assumed the role of developer. Throughout the time that Valley of Lakes has been in existence, potential purchasers of lots have been told that certain amenities would be built. These included "Lake Algonquin," an 18–hole golf course, roads, and central water and sewer systems. The amenities have not been completed, and plaintiffs claim that neither High Vista nor CBG ever planned to build them.

First Eastern was CBG's primary source of financing, eventually loaning over $20,000,000.00 for Valley of Lakes. There were two lines of credit involved. The first was a revolving development loan secured by a first mortgage on the property owned by CBG. The second was a receivable line of credit which operated with the sale of a lot by CBG and issuance of a purchase money mortgage which was collaterally assigned to First Eastern. CBG financed up to 90% of the lot price, and First Eastern advanced 90% of the financed amount to CBG and then collected on the notes through an agent.

In the early years (1987–1989) of CBG's management, Valley of Lakes did well both in the construction of amenities and in the sale of lots. With the downturn in the economy after 1990, however, lot sales declined and CBG encountered financial difficulties. CBG failed to meet its obligations to First Eastern, and attempted to refinance or sell the development. At the same time, First Eastern made cash infusions into the project and took other actions to ensure that the development did not collapse due to cash flow difficulties.

When neither a buyer nor a financier appeared, CBG filed a petition in bankruptcy under Chapter 11. *See In re C.B.G. Ltd.,* 150 B.R. 570 (Bkrtcy.M.D.Pa.

1992).[2] CBG became debtor-in-possession, and in that status entered into an agreement with MLA Management Associates, Inc., to monitor CBG's actions as debtor-in-possession. During the bankruptcy, First Eastern made advances to CBG to preserve its collateral, an action for which an order of the bankruptcy court dated October 22, 1992, provided. However, First Eastern took no action which would cause it to undertake any obligation as the owner or developer of the project.

In February, 1995, CBG was removed as debtor-in-possession and a trustee was appointed. In 1996, a joint venture of Double Diamond, Inc., and the Valley of Lakes Civic Association (VOLCA), an association of lot owners, acquired CBG's ownership interest. In the meantime, First Eastern merged with PNC Bank, which released its, interests in Valley of Lakes for approximately $1.2 million. The release resulted in losses to First Eastern/PNC of well over $20 million.

Presently, Double Diamond and VOLCA have made progress on the infrastructure of Valley of Lakes, and lots are selling once again.

### C. RICO Claim

To recover in a civil RICO action, a plaintiff must prove: (1) a violation of 18 U.S.C. § 1962; (2) an injury to the plaintiff's business or property; and (3) that the RICO violation was the proximate cause of the injury. *Perlberger v. Perlberger,* 32 F.Supp.2d 197, 201 (E.D.Pa.1998) (citing *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 265–268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)), *vacated in part and modified in part on other grounds,* 34 F.Supp.2d 282 (E.D.Pa.1998). To establish a violation of § 1962, the

---

**1.** Plaintiffs repeatedly refer to one of the partners of CBG as a "Sicilian company." The company, according to plaintiffs, is headquartered in Torino, Italy. Not only is the company not involved in this litigation, so that it need not be named, we see no reason that the company cannot be referred to as an Italian company, except that "Sicilian" is intended to

imply organized crime. Plaintiffs' repeated use of the term in this gratuitous manner is offensive.

**2.** The only published opinion in the case is *In re C.B.G. Ltd.,* 150 B.R. 570 (Bkrtcy.M.D.Pa. 1992).

plaintiff must prove: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). A "pattern of racketeering activity" is the occurrence of at least two acts of racketeering activity, known as predicate acts and enumerated in the statute, within a period of ten years. *Id.* (citing 18 U.S.C. § 1961(5); *Sedima* at 496 n. 14, 105 S.Ct. 3275).

■ The problem with plaintiffs' claims against First Eastern is that the record does not support a finding that it "conducted" the affairs of an enterprise.

Actually, as First Eastern points out, its role is analogous to the role played by the "Financing Defendants," the "Mortgagee Defendants," and the "Lot Contract Defendants" in *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998). In that case, the various defendants so categorized provided financing for a real estate development project in Florida which, like Valley of Lakes, encountered financial difficulties. Succinctly stated, the Third Circuit characterized their role as, at most, aiders and abettors of the scheme rather than as participants in the scheme or members of the enterprise, or even as co-conspirators. Since there is no liability for aiding and abetting a RICO violation, the district court's dismissal of the claim was affirmed. *Rolo* at 657.

As in *Rolo*, plaintiffs' allegations here do not amount to more than aiding and abetting, since there is no evidence to support a claim that First Eastern directly participated in fraud or extortion, the purported predicate acts, nor does it support a claim of conspiracy. Despite the many trees felled in the effort to create a record reflecting the contrary, in the end, plaintiffs can prove nothing more than that First Eastern facilitated the conduct of CBG's business by providing financing, which it had a contractual obligation to do. It did not itself "conduct" the affairs of CBG, Valley of Lakes, or any other entity that, under these circumstances, may be considered an "enterprise" for RICO purposes. Under *Rolo*, that simply does not give rise to RICO liability.

Summary judgment on the claims under RICO will be entered in favor of First Eastern.

### D. Common Law Fraud Claim

■ Plaintiffs' common law fraud claims are based on the failure of First Eastern to disclose the precarious financial condition of CBG, a fact which prevented the completion of the development. The statute of limitations for a claim of fraud in Pennsylvania is two years. 42 Pa.Cons. Stat.Ann. § 5524(7). A claim accrues when the injury is suffered, and the statute begins to run when the plaintiff knows, or reasonably should know, that he or she has been injured and that the injury was caused by the conduct of another. *Pitts v. Northern Telecom, Inc.*, 24 F.Supp.2d 437, 440–441 (E.D.Pa.1998) (summarizing Pennsylvania law).[3]

The named plaintiffs all bought their lots by 1990, so that their claims had accrued by that time. CBG's bankruptcy petition was filed on March 30, 1992, an event which would give any reasonable person cause to know of the financial status of CBG and the likelihood of any substantial expenditure on infrastructure. Plaintiffs' complaint was not filed until

---

**3.** Although the complaint states that the common law fraud claim is under New Jersey law, we believe that the law of Pennsylvania would govern because the tangible property which is the subject of the parties' transactions is land, and the land is located within Pennsylvania. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 148(2)(e) and comment *i*. *Cf. Continental Casualty Co. v. Diversified In-* *dustries, Inc.*, 884 F.Supp. 937, 952 n. 15 (E.D.Pa.1995) (Pennsylvania law governed counterclaim against insurers for misrepresentation because, *inter alia*, subject of insured risk was remediation site located in Pennsylvania). Plainly, Pennsylvania has an overriding interest in the application of its law to real estate transactions involving land within its borders.

June 17, 1994, after the limitations period had expired.

First Eastern is entitled to summary judgment on plaintiffs' claim of common law fraud.

## V. MLA'S MOTION FOR SUMMARY JUDGMENT

■ MLA moves for summary judgment because (1) its actions were "within the scope of the Order of 22 October 1992" (a stipulation and plan for reorganization for CBG approved by the bankruptcy court on that date) and (2) *res judicata,* also called claim preclusion, bars plaintiffs from pursuing issues and claims arising under the bankruptcy court's order.

Unfortunately, MLA's brief in support of its motion is a terse document which does not fully set forth reasons warranting the grant of summary judgment. The "Argument" section of the brief is somewhat less than three pages of numbered paragraphs simply denying liability.

As to its conduct being "within the scope" of the bankruptcy court's order, we are not sure precisely what MLA means. An order allowing it to act as an agent of the debtor does not somehow insulate MLA from liability for tortious activity in that capacity, and to say that its conduct was "within the scope" of the bankruptcy order does not mean that the bankruptcy court approved the conduct.[4]

■ As to MLA's argument concerning the *res judicata* effect of the bankruptcy court's order, the cases it cites refer to separate proceedings initiated by a creditor, debtor, or party in privity when the claims were not asserted in the plan of reorganization. *See, e.g., Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I),* 160 B.R. 374 (9th Cir.BAP 1993) (general partner in Chapter 11 debtor barred from asserting lender liability claims which were

derivative of debtor's pre-petition claims against creditor), *aff'd,* 59 F.3d 175 (9th Cir.1995) (table); *Francis v. Holmes Land Co. (In re GEX Kentucky, Inc.,* 100 B.R. 887 (Bkrtcy.N.D.Ohio 1988)) (creditor who voted to accept reorganization plan barred from bringing separate complaint for equitable subordination of claims). *See also Cohen v. De La Cruz (In re Cohen),* 106 F.3d 52 (3d Cir.1997) (statutory exception to dischargeability (and therefore to *res judicata* ) applies to claims for fraud and false pretenses), *aff'd,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). An order cannot constitute *res judicata* for claims which have not yet accrued, and the claims asserted against MLA relate to conduct occurring after issuance of the order of the bankruptcy court.

The arguments as asserted by MLA do not justify the granting of summary judgment in its favor.

## VI. ARLENE CONTE'S MOTION FOR SUMMARY JUDGMENT

■ Defendant Arlene Conte moves for summary judgment with respect to the sole claim against her, the RICO claim.

As a preliminary matter, plaintiffs contend that the motion should be deemed withdrawn pursuant to LR 7.5 of the Local Rules for the Middle District of Pennsylvania because the brief in support of the motion was not filed until September 29, 1998, after the motion was filed September 15, 1998. LR 7.5 provides for the filing of a brief in support 10 days after the filing of a motion. Under Fed.R.Civ.P. 6(a), when a local rule provides for a time period of less than 11 days, intervening weekends and holidays are excluded in the computation of the period. The brief in support of the motion was timely filed.

Turning to the merits of the motion, we agree with Arlene Conte that the record does not support plaintiffs' contention that

---

4. For example, the bankruptcy court order allowed MLA to assist in the collection of fees due to CBG. This would not give MLA the authority to break into houses and take the money, though such conduct would be "within the scope" of its collection authority.

she was "associated" with a RICO enterprise. The allegations against her center on the purchase of a lot and house in Valley of Lakes with her cousin, John T. Miele. According to plaintiffs, the house was shown to Miele while it still was owned by Rocco and Ingrid Messina. Arlene Conte co-signed the loan documents and deed with Miele, and the two were named as joint tenants with right of survivorship. The house was purchased by Paul Malone Associates from the Messinas for $45,000.00, and Paul Malone Associates then sold the house to Miele and Conte for $55,000.00. Defendant Cedrone is a partner in Paul Malone Associates.

There are, of course, several rather obvious problems with plaintiffs' allegations. First, Arlene Conte is not a partner in Paul Malone Associates, and plaintiffs have produced no evidence that Arlene Conte knew anything about the purchase from the Messinas by Paul Malone Associates. Arlene Conte also was neither a principal nor an employee of CBG. In fact, in co-signing with Miele, Arlene Conte made herself responsible for the inflated purchase price.

To counter the rather glaring absence of evidence, plaintiffs point to a number of factors which they contend render Arlene Conte an associate of the RICO enterprise. First, they point to the fact that Arlene Conte first lived with, then married, Ralph Conte, one of the alleged principals of the alleged enterprise. They also point out that Arlene Conte "knew" Cedrone and Thomas Hawk of First Eastern's predecessor in interest.

 Stated bluntly, plaintiffs' allegations in this regard border on the ludicrous. That a party "knows" someone who may be part of an enterprise hardly "associates" that party with the enterprise. The same is true of the fact that Arlene Conte lived with and later married Ralph Conte. Marriage to a person who is part of a RICO enterprise does not render the spouse liable.[5]

At most, plaintiffs' allegations and evidence may support a claim for a single instance of fraud, not RICO. Arlene Conte's motion for summary judgment will be granted.

## VII. RALPH CONTE'S MOTION FOR SUMMARY JUDGMENT OR FOR PARTIAL SUMMARY JUDGMENT

Defendant Ralph Conte moves for summary judgment on Counts I (RICO), II (Interstate Land Sales Full Disclosure Act), and Count IV (New Jersey Estate Sales Full Disclosure Act). Plaintiffs again make an argument concerning the date of the filing of the brief in support of the motion for summary judgment, and we reject the argument for the same reasons recited with respect to Arlene Conte's motion for summary judgment.

With respect to Count I, the statute of limitations defense discussed with respect to First Eastern's motion for summary judgment applies as well to Ralph Conte's motion.

With respect to Count II, the activities prohibited under the Interstate Land Sales Full Disclosure Act are set forth in 15 U.S.C. § 1703(a)(1), (2). A three-year limitations period applies to actions brought under § 1703(a)(1), (a)(2)(D). 15 U.S.C. § 1711(a)(1). The limitations period runs from the date a contract of sale or lease is signed. *Id.* All of the named plaintiffs bought their lots prior to June 17, 1991, or more than three years before the date the complaint was filed.

A three-year limitations period also applies to actions brought under § 1703(a)(2)(A), (B), (C), but with an additional proviso that the period begins to run from the date of discovery of the violation, or the date on which the discovery should

---

**5.** This remarkable concept would become even more fascinating in the context of criminal RICO enterprises, in which the concept of a "crime family" would be broadened considerably and include the innocent family and friends of any organized crime figure.

have been made by the exercise of reasonable diligence. 15 U.S.C. § 1711(a)(2). Ralph Conte argues that no conduct on his part implicates the tolling provision. However, the statute does not refer to any conduct on the part of an individual defendant; it tolls the limitations period until the plaintiff reasonably can discover the violation, regardless of the defendant's intervening conduct.

Ralph Conte also argues that plaintiffs cannot prove detrimental reliance on any alleged misrepresentation or material omission on his part. Plaintiffs cite, *inter alia, Hoffman v. Charnita, Inc.*, 58 F.R.D. 86 (M.D.Pa.1973), for the proposition that reliance is not an element of a claim under § 1709. The problem with plaintiffs' argument is that § 1709 has been amended.

The version of § 1709 which was analyzed in *Hoffman* read in part as follows:

> Any developer or agent, who sells or leases a lot in a subdivision *** (2) by means of a property report which contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein, may be sued by the purchaser of such lot.

*Hoffman* at 89 (quoting 15 U.S.C. § 1709(b), since amended). Judge Herman of this court found this language to be analogous to § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l, under which a buyer of securities need not prove reliance on a material misrepresentation or omission in an action against the seller. *Id.* at 90. Based on the similarity, Judge Herman concluded that a plaintiff need only prove a material misrepresentation or omission from a property report to recover under § 1709(b)(2).

Since the amendment, however, the language is no longer similar. Section 1709 now provides, "A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title. . . ." 15 U.S.C. § 1709(a). Making an untrue statement of fact or omitting a material fact from a property report, as well as providing advertising materials containing information inconsistent with that required to be disclosed in the property report, is prohibited under § 1703(a)(1)(C), (D), i.e. two of the provisions for which an action is time-barred.

■ The provisions under which plaintiffs may proceed in this case, § 1703(a)(2)(A), (B), (C), are separate matters, however. Subparagraphs (A) and (C) relate to the employment of fraudulent means in making the sale, and therefore would require detrimental reliance. The proscription described in subparagraph (B) is not limited to making a false statement or material omission, but involves obtaining money or property by such means and involves examining the circumstances of the overall offer and sale or lease, as relates to any material information. In other words, subparagraphs (A), (B), and (C) prohibit fraud. Since establishing fraud requires proof of detrimental reliance, plaintiffs are required to so prove in this instance.

We recognize that there is a split in authority as to whether a claim of fraud under the Act requires evidence of reliance. *See, e.g., Prebil v. Pinehurst, Inc.*, 638 F.Supp. 1314, 1317 n. 1 (D.Mont.1986) (noting split and citing cases); *Gibbes v. Rose Hill Plantation Development Co.*, 794 F.Supp. 1327, 1336 and 1336 n. 22 (D.S.C.1992) (also noting split and indicating that plaintiff need not show reliance on an omission but must show reliance on a misrepresentation if claim brought under § 1703(a)(2)(B)). However, we believe that the language of the statute is to the effect that simply making a material misrepresentation or omission in a document required to be prepared and/or provided under the Act is actionable under §§ 1709, 1703(a)(1), and does not require proof of reliance, while fraud under § 1703(a)(2) requires proof of reliance.

However, the question is not limited to reliance on statements made directly by the seller to the purchaser, since a developer or agent may be liable for fraud committed "directly or indirectly" under § 1703(a). Thus, if Ralph Conte was responsible for false statements placed in advertising or which otherwise was made public and reached a buyer, and the buyer relied on that information, Ralph Conte may be liable.

Ralph Conte has not provided reference to facts of record which would require a finding that no statement attributable to him was relied upon by the named plaintiffs. His motion for summary judgment[6] will be denied insofar as it refers to the Interstate Land Sales Full Disclosure Act.

Ralph Conte also moves for summary judgment on Count IV of the complaint, which sets forth a claim under the New Jersey Real Estate Sales Full Disclosure Act. Conte argues that plaintiffs are not entitled to recover under the New Jersey Planned Real Estate Development Full Disclosure Act, a separate provision. Conte has not shown that he is entitled to judgment on Count IV of the complaint.

## VIII. CONCLUSION

Plaintiffs' motion to supplement and amend the complaint will be denied as futile because the RICO claim is time-barred regardless of the amendment. Plaintiffs' motion for extension of deadlines has been addressed and is moot, and will be denied for statistical purposes. Defendants' various motions for decertification of the class and sub-classes will be granted based on the widely varying factual analyses necessary to evaluate the statute of limitations defense.

First Eastern's and Arlene Conte's motions for summary judgment will be granted. MLA's motion for summary judgment will be denied. Ralph Conte's motion for summary judgment will be granted in part and denied in part.

---

6. Ralph Conte also seeks, as an alternative to summary judgment, "summary adjudication." We are not clear precisely what Conte means by that term, which is not in Black's Law Dictionary. A limited search of the WESTLAW electronic database provides some insight. Apparently, "summary adjudication" is the process of resolving a claim or dispute without the full panoply of procedural protections. Based on the rights to due process and to trial by jury, the instances in which "summary adjudication" is permissible are limited. For instance, petty, direct contempt of court is subject to "summary adjudication" to protect the integrity of the judicial process. *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 832, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). *See also Levine v. United States*, 362 U.S. 610, 617–618, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960) (contempt in grand jury proceedings subject to summary adjudication). Also, a governmental entity may be entitled to take some action against an individual with diminished due process protections if its interest in "summary adjudication" outweighs the individual's interest. *Goldberg v. Kelly*, 397 U.S. 254, 261, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (but finding procedures for termination of welfare benefits to be inadequate because governmental interest did not outweigh welfare recipient's interest

in benefits). Of course the obverse also may be true. *Phelps v. United States*, 421 U.S. 330, 332–333 and n. 2, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975) (government's interest in tax lien outweighed petitioner's interest in summary adjudication of tax claim by bankruptcy court, so that government was entitled to plenary proceeding). Apparently because the need for a full trial to a jury is obviated, the granting of summary judgment is a form of summary adjudication. *See Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 552, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997) (when district court granted motion for summary judgment in Jones Act case because plaintiff was not a "seaman" under that Act, its later order confirmed the "summary adjudication" of plaintiff's non-seaman status); *In re School Asbestos Litigation*, 977 F.2d 764, 794 (3d Cir.1992) (party that fails to file timely motion for summary judgment waives right to summary adjudication).

In this instance, apart for summary judgment, Ralph Conte fails to cite the form of "summary adjudication" to which he purports to be entitled, nor any basis (whether factual or in the Federal Rules of Civil Procedure) for the same.

Appendix A

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEON R. DONGELEWICZ,
et al., Plaintiffs,

v.

FIRST EASTERN BANK,
et al., Defendants.

No. 3:CV–95–0457.

(Judge McClure)

*NOTICE OF DECERTIFICATION OF CLASS ACTION*

**TO: All persons in the Primary Class and the four Subclasses described below who have not previously opted out of this class action litigation.**

On June 17, 1994, the plaintiffs in this action, being Leon R. Dongelewicz, Margaret J. Dongelewicz, Francis X. Burns, Laura Burns, Lois A. Burns, George M. De Persia, Sharon M. De Persia, John B. Knox, Betsy C. Knox, John T. Miele, Frank J. Rachubinski, Helen A. Rachubinski, Senta M. Sheridan, Ger D.J. Smit, Waclaw Szczesniak, and Danuta Szczesniak, filed a complaint in the United States District Court for the District of New Jersey. The complaint alleged that the defendants violated the Racketeer Influenced and Corrupt Organizations Act, the Interstate Land Sales Full Disclosure Act, and the New Jersey Real Estate Full Disclosure Act, and that the defendants committed fraud and deceit. The defendants are First Eastern Bank, N.A., First Eastern Corporation, Frank M. Cedrone, C.B.G. Limited, Oneida Water Company, Valley Utilities Company, Inc., MLA Management Associates, Inc., Ralph Conte, and Arlene Conte. First Eastern Bank, N.A., and First Eastern Corporation now are part of PNC Bank, N.A. The case was transferred to the United States District Court for the Middle District of Pennsylvania because the subject of the litigation,

a real estate development called The Valley of Lakes, is located in the Middle District.

Previously, the court ruled that the case should be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Primary Class and four Subclasses were defined as follows:

1. *Primary Class:* "All persons and entities throughout the United States and its territories (other than the defendants named in the complaint) that, since September 30, 1986, have purchased or owned lots, whether improved or unimproved, in The Valley of Lakes subdivision located in Schuylkill and Luzerne Counties near Hazleton, Pennsylvania."

with respect to the following cause(s) of action: Any claims for damages or injunctive relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), premised upon the alleged racketeering activity of defendants PNC Bank, N.A., by merger with First Eastern Bank, N.A., First Eastern Bank Corp., a subsidiary of PNC Bank Corp., C.B.G. Ltd., Frank Cedrone, Valley Utilities Co., Inc., Oneida Water Co., MLA Management Associates, Inc., Ralph Conte, Arlene Conte, and the Property owners Association of The Valley of Lakes, an association whose board members are George Denke, Jr., Dianne French, Ronald Kichline, and Thomas Peirson, relating to The Valley of Lakes development.

2. *Subclass A:* "All persons and entities throughout the United States and its territories (other than the defendants named in the complaint) that, since September 20, 1986, have purchased unimproved lots, in The Valley of Lakes subdivision located in Schuylkill and Luzerne Counties near Hazleton, Pennsylvania."

with respect to the following cause(s) of action: Any claims for damages or injunctive relief under the Interstate Land Sales Full Disclosure Act (Land Disclo-

sure Act), 15 U.S.C. § 1701, against defendants C.B.G. Ltd., Frank Cedrone, or Ralph Conte premised upon the sale of unimproved lots in The Valley of Lakes subdivision.

3. **Subclass B:** "All persons and entities throughout the United States and its territories (other than the defendants named in the complaint) that, since September 30, 1986, have owned lots, whether improved or unimproved, in The Valley of Lakes subdivision located in Schuylkill and Luzerne Counties near Hazleton, Pennsylvania."

with respect to the following cause(s) of action: Any claims for damages or injunctive relief under 42 U.S.C. § 1983 against defendant C.B.G. Ltd., Frank Cedrone, Property Owners Association (POA), or MLA Management Associates, Inc., premised upon the defendants' alleged deprivation of property interests and/or liberty interests under color of statute, ordinance, regulation, or usage relating to The Valley of Lakes subdivision.

4. **Subclass C:** "All persons and entities throughout the United States and its territories (other than the defendants named in the complaint) that, since September 30, 1986, have purchased or owned lots, whether improved or unimproved, in The Valley of Lakes subdivision located in Schuylkill and Luzerne Counties near Hazleton, Pennsylvania, based on (a) any offer or disposition made in or from the State of New Jersey; or (b) any offer directed by the developer or its agent originating from outside the State of New Jersey to the persons or entities within the State of New Jersey."

with respect to the following cause(s) of action: Any claims for damages or injunctive relief under the New Jersey Real Estate Sales Full Disclosure Act, N.J.S.A. § 45:15–16.47, against defendants C.B.G. Ltd., Frank Cedrone, or Ralph Conte, relating to The Valley of Lakes subdivision.

5. **Subclass D:** "All persons and entities throughout the United States and its territories (other than the defendants named in the complaint) that, since September 30, 1986, have purchased or owned lots, whether improved or unimproved, in The Valley of Lakes subdivision located in Schuylkill and Luzerne Counties near Hazleton, Pennsylvania." with respect to the following cause(s) of action: Any claims for damages or injunctive relief under a claim for common law fraud and deceit pursuant to the law of the State of New Jersey against PNC Bank, N.A., by merger with First Eastern Bank, N.A., First Eastern Bank Corp., a subsidiary of PNC Bank Corp., MLA Management Associates, Inc., C.B.G. Ltd., Frank Cedrone, Valley Utilities Co., Inc., and Oneida Water Company relating to The Valley of Lakes subdivision.

However, the court further ordered that the class certification was provisional and was subject to change in light of further developments in the case.

On September 30, 1999, on application of the defendants, PNC Bank, N.A., MLA Management Associates, Inc., Arlene Conte, and Ralph Conte, the court determined that the claims of the members of the Primary Class and the four Subclasses involved varying factual matters and should no longer be maintained as a class action. As a result of this determination the court decertified the Primary Class and four Subclasses, thereby removing the members of each from this suit. Therefore, all persons or entities who are members of the above-described Primary Class and/or one of the four Subclasses who may possess claims against the named defendants related to the purchase and/or ownership of a lot or lots in The Valley of Lakes subdivision are no longer parties to this suit and cannot advance their claims in the context of this suit.

Accordingly, you are hereby notified that your interests are no longer being represented in this lawsuit by the plaintiffs or their counsel. However, if you are a member of the Primary Class and/or one of the four Subclasses described above, and you believe that you have a claim or claims against one or more of the named defendants relating to the purchase and/or ownership of a lot or lots in The Valley of Lakes, you may still attempt to pursue your claim, pursuant to one of the statutes or common law recited above, by filing a complaint.

If you choose to pursue such a claim, you should be aware that the claim may be subject to prior rulings by the court, or to defenses such as the expiration of the statute of limitations, which already has been asserted successfully as to some claims in this case. Due to the complicated nature of the case, it would be advisable for you to contact an attorney before attempting to pursue your claims in court.

A copy of the Memorandum and Order of Court decertifying the Primary Class and the four Subclasses is available, for a fee, from:

Clerk of Court

U.S. District Court

Federal Building

240 West Third Street

P.O. Box 608

Williamsport, PA 17701

(570)323–6380

Nothing in this Notice is to be construed as an expression of the belief of the court as to the likelihood of success in obtaining relief or as to the merits of any claim(s) which a member of the now–decertified Primary Class or Subclasses may assert. This notice is intended merely to advise you of the decertification of the Primary Class and four Subclasses due to the effect of the decertification on the members of the Primary Class and four Subclasses.